IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| D & D Hospitality, LLC, | § | Case No. 11-83081-JAC |
| | § | Chapter 11 |
| *Debtor.* | § | |

**BRIEF IN SUPPORT OF NORTH TEXAS HOTEL GROUP,
LTD.'S MOTION TO DISMISS FOR IMPROPER VENUE,
OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

COMES NOW North Texas Hotel Group, Ltd. ("NTHG") and files this Brief in Support of its Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue (the "Motion"). In support thereof, NTHG states as follows:

### INTRODUCTION

The Northern District of Alabama is not the proper venue for this bankruptcy case as permitted by 28 U.S.C. § 1408. The Court should therefore dismiss this case for lack of proper venue. In the alternative, the Court should transfer this case to the United States District Court for the Eastern District of Texas (the "Texas Court") for referral to the appropriate bankruptcy court, in the interest of justice and for the convenience of the parties, pursuant to 28 U.S.C. §§ 1408 & 1412, Federal Rule of Bankruptcy Procedure 1014(a), and 11 U.S.C. § 105(a). *See In re Terry Mfg. Co., Inc.*, 323 B.R. 507, 509 (Bankr. M.D. Ala. 2005).

### FACTUAL BACKGROUND

1. D & D Hospitality, LLC (the "Debtor") is a Texas limited liability company that owns and operates a Comfort Inn and Suites hotel in Gainesville, Texas.

2. The Debtor's only place of business is in Gainesville, Texas.

3. Upon information and belief, the Debtor has no property or no material property located outside of Texas.

4. The Debtor's secured creditors are located in Texas. Upon information and belief, US Bank and First Citizen's Bank have offices in Texas. NTHG and the SBA are located in Lindsay, Texas and Plano, Texas, respectively.

5. The majority of the Debtor's unsecured creditors are located in Texas. Of the few unsecured creditors located outside of Texas, only two are located in Alabama. The Debtor's schedules [*Docket No. 1*] list Maynard, Cooper, & Gale, PC of Birmingham, Alabama as holding an unsecured claim for professional services in the amount of $985.50 and Royal Cup as holding an unsecured claim for undisclosed goods or services in the amount of $1,341.38.

6. With the exception of the two unsecured creditors listed above, the Debtor's managing member and majority equity interest holder, Gagandeep Dhaliwal, appears to be the Debtor's only tie to Alabama. Mr. Dhaliwal's address is listed as PO Box 2675, Huntsville, Alabama in the Debtor's Statement of Financial Affairs. This is the same address listed for the Debtor on the Petition. The address listed for the Debtor's minority equity interest holder, Bawa Dhillon, is 5125 Brandywine Lane, Frisco, Texas.

7. On or about April 6, 2007, the Debtor executed two promissory notes in the amounts of $200,000 and $50,000, respectively, in favor of NTHG (the "Notes"). The Notes were secured by a Deed of Trust, whereby a lien in favor of NTHG was placed on the Debtor's hotel property located in Gainesville, Texas, as more fully described in the Deed of Trust (the "Property")

8. On or about August 16, 2011, NTHG posted the Property for foreclosure in Cooke County, Texas, in accordance with Texas non-judicial foreclosure laws and procedures. The foreclosure sale was scheduled to occur on September 6, 2011.

9. The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on September 2, 2011, just four (4) days prior to the scheduled foreclosure sale. Upon information and belief, the Debtor filed this bankruptcy case to avoid the scheduled foreclosure.

## LEGAL ARGUMENT

### I. The Debtor Commenced this Bankruptcy Case in an Improper Venue and the Case Should Therefore Be Dismissed or Transferred

Section 1408 of title 28 of the United States Code ("Section 1408") sets forth the eligibility for a debtor to file for bankruptcy within a particular venue. However, even if venue is proper, the court may transfer venue based on either (i) the interest of justice or (ii) the convenience of the parties. 28 U.S.C. § 1412; FED. R. BANKR. P. 1014(a)(2); *In re Campbell*, 242 B.R. 740, 744 (Bankr. M.D. Fla. 1999); *In re Newport Creamery, Inc.*, 265 B.R. 614, 616 (Bankr. M.D. Fla. 2001).

This case is the quintessential example of when a court should dismiss or transfer a case to another district based on improper venue, the interest of justice, and/or convenience of the parties. The Northern District of Alabama is not a proper venue for this case. Section 1408 provides that a bankruptcy petition may be filed only in the district court for the district in which the debtor has its (1) domicile, (2) residence, (3) principal place of business, (4) principal assets, or (5) affiliate or general partner that is a debtor in a pending bankruptcy proceeding:

> Except as provided in section 1410 of this title [28 USCS § 1410], a case under title 11 may be commenced in the district court for the district--
>
> (1) in which the [a] domicile, [b] residence, [c] principal place of business in the United States, or [d] principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty

days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) [e] in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408.

Because the Debtor's domicile, principal place of business, and principal asset are all in Texas, the Northern District of Alabama is not the proper venue for this case. There is no pending title 11 case with an affiliate, general partner, or partnership of the Debtor, and "residence" has no application here, because residence applies only to individuals. *In re Suzanne DeLyon, Inc.*, 125 B.R. 863, 866 (S.D.N.Y. 1991); *see also* 1-17 *Collier Bankruptcy Practice Guide* P.17.03(2)(a).

### A. The Debtor's Domicile is in Cooke County, Texas

The Debtor is domiciled in Texas. The Debtor is a Texas limited liability company, organized and existing under the laws of the state of Texas, with its principal place of business in Gainesville, Texas. *See In re Segno Commc'ns, Inc.*, 264 B.R. 501 (Bankr. N.D. Ill. 2001); *In re Innovative Commc'n Co., LLC*, 358 B.R. 120 (Bankr. D. Del. 2006).

The Debtor's bankruptcy petition should have been filed in the United States District Court for the Eastern District of Texas, which is the federal district of the Debtor's domicile.

### B. The Debtor's Principal Place of Business is in Cooke County, Texas

The United States Court of Appeals for the Fifth Circuit addressed how a debtor's principal place of business is determined when a debtor conducts "business" in more than one location. *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir. 1979). Based on the legislative history of Section 1408, the court concluded that a debtor's principal place of business

is not always the same location as its principal assets. *Id.* at 1244-45. In this case, however, the Debtor's principal place of business <u>and</u> its principal asset are both located in Texas.

In a memorandum opinion, the United States District Court for the Northern District of Alabama ruled on the appeal of a case with strikingly similar facts to this case. *In re Sharktooth Destin, Inc.*, No. 98-83425-JAC-11 (N.D. Ala. March, 31, 1999).[1]

The district court in *Sharktooth* noted that "a number of district courts and bankruptcy courts have, based on the Fifth Circuit's language in *Commonwealth Oil*, held that an entity's 'principal place of business' in the bankruptcy context is the place where it's 'major business decisions' are made." *Id.* at *7. Before commenting on that interpretation, the *Sharktooth* court cited with approval and related the case before it to *In re Dock of the Bay, Inc.*, 24 B.R. 811 (Bankr. E.D.N.Y. 1982).

*Dock of the Bay* involved a Maryland corporation that operated fast food restaurants exclusively in Maryland. The corporation's day-to-day affairs were managed in Maryland, where its books and records were kept. However, the Debtor filed for bankruptcy in New York, claiming New York as its principal place of business, based on the fact that New York was where the corporation's president, sole stockholder, chief financier, and largest creditor, conducted his business. *Id.* at 813-814. The bankruptcy court disagreed, holding that Maryland was the corporation's principal place of business:

> What Dock of the Bay is seeking to do is elevate a useful metaphor, "nerve center," into a substantive principle of law. Its position that New York is the 'financial heart' of the debtor's operations because it is the place from which [the Debtor's president] directs and controls the company and provides financing.
>
> It is doubtful whether any of these activities singly or together constitute the "doing of business." Certainly, however, these straws cannot make New York,

---

[1] During the October 4, 2011 hearing, the Court noted that this case is strikingly similar to the *Sharktooth* case, with which, originated in this court.

rather than Maryland, the place where the principal part of the debtor's business was carried on.

What business Dock of the Bay did in the sense of generating income it did in Maryland: it was there that its restaurants were located; it was there that its employees worked; it was there that its books were kept; it was there that it incurred the debts that, apart from what it owed [its president], have brought it into the bankruptcy court. The debtor earned no money in New York; it had no business address in New York; it had no telephone in New York; it received no mail in New York; it maintained no bank account in New York . . . .

*Id.*

Similarly, the Debtor's real property, hotel, and employees are located in Cooke County, Texas, and nearly all of the creditors are located outside of the state of Alabama. The Debtor's bankruptcy petition should have been filed in the Federal United States District Court for the Eastern District of Texas, which is the district corresponding to the Debtor's principal place of business.

### C. The Debtor's Principal Asset is Located in Cooke County, Texas

States have a uniquely strong interest in deciding controversies regarding real property within their borders. As the United States Bankruptcy Court for the Middle District of Florida has noted: "Matters concerning real property have always been of local concern and traditionally are decided at the situs of the property. Were the stay lifted so that the foreclosure could continue, that foreclosure could only proceed in the local courts." *In re Dew Mortgage Co.*, 10 B.R. 242, 244 (Bankr. M.D. 1981).

The United States Bankruptcy Court for the Southern District of New York has noted that "[i]n virtually every single asset improved real estate partnership case which we have seen, the court has transferred the bankruptcy to the jurisdiction where the assets are located." *In re Pavilion Place Assocs.*, 88 B.R. 32, 36 (Bankr. S.D.N.Y. 1988). In *Pavilion*, the debtor's

1177423.3                                                    6

Case 11-83081-JAC11    Doc 59    Filed 10/07/11    Entered 10/07/11 15:02:25    Desc Main
Document      Page 6 of 17

principal asset was a shopping center in Minnesota. *Id.* Although the debtor's principal place of business was in New York, the court held that:

> Although the partnership's books and records are in New York . . . . Improved real estate is a peculiarly local concern often better administered by a court in the district in which it is located. . . . Having chosen to purchase a shopping center in Minnesota, the Debtor knowingly subjected itself to the possibility of legal action in that state, be the action by tenants or creditors.

*Id.*

Accordingly, the court in *Pavilion* ordered the bankruptcy case transferred to the District of Minnesota, where the improved property was located. *Id.*

The United States District Court for the Southern District of New York transferred venue of another bankruptcy case for the same reasons. *In re Old Delmar Corp.*, 45 B.R. 883 (Bankr. S.D.N.Y. 1985). The court in *Delmar* held that the factor which "overwhelmingly militate[d] in favor of transfer" was that all of the debtor's assets, including an apartment complex, were located in Texas. *Id.* at 884. The court explained:

> [I]f liquidation should occur, the Texas court would be in the best position to efficiently and intelligently administer the real estate property. . . .
>
> If any dispute erupts or liquidation becomes necessary, Texas would be the logical forum since local law would probably apply. . . . Moreover, the property would best be appraised by those most familiar with the area; the witnesses would, therefore, most likely be from Texas.

*Id.* at 884-85 (quoting and citing cases).

Citing *Dew Mortgage*, the United States Bankruptcy Court for the Northern District of Illinois held that a bankruptcy case would be most efficiently administered in Missouri, where the debtor's real estate was located. *In re Eleven Oak Tower Ltd. P'ship*, 59 B.R. 626, 629 (Bankr. N.D. Ill. 1986). The United States Bankruptcy court for the Eastern District of Missouri likewise transferred a bankruptcy case to the Middle District of Florida in the interest of justice and convenience of the parties. *In re Spicer Oaks Apartments, Ltd.*, 80 B.R. 142 (Bankr. E.D.

1177423.3                                    7

1987).  In *Spicer Oaks*, the majority of the debtor's creditors as well as the debtor's sole asset—real property—were all located in Tampa, Florida.  *Id.* at 143.

Citing *Old Delmar* and *Eleven Oak Tower* with approval, the United States Bankruptcy Court for the District of Montana transferred a bankruptcy case to the Eastern District of Washington.  *In re Sundance Corp.*, 84 B.R. 699, 703 (Bankr. D. Mont. 1988).  The fact that the debtor's only asset was an apple orchard located in Eastern Washington was cited by the court as a "quite obvious" and "most competing reason to change venue to Eastern Washington."  *Id.*

For the same reasons stated in the numerous cases cited above with similar facts, this case should be dismissed or transferred to the Texas Court.

## II. This Case Should be Transferred to the Texas Court for the Convenience of the Parties and in the Interest of Justice

As explained above, in virtually all bankruptcy cases involving a principal or sole asset of real property, the case is transferred to the venue where the real property is located.  Even if this fact alone were not enough, application of the factors considered by courts in analyzing "convenience of the parties" and "interest of justice" warrants the transfer of this case to the Texas Court.

### A. Convenience of the Parties

Section 1412 of title 28 of the United States Code ("Section 1412") provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.  28 U.S.C. § 1412.  In deciding whether a transfer of venue is warranted based on the "convenience of the parties," bankruptcy courts have long considered the factors set forth by the Fifth Circuit Court of Appeals in *In re Commonwealth Oil Refining*:

1. The location of the assets;

2. The proximity of creditors of every kind to the court;

3. The economic administration of the estate;

4. The necessity for ancillary administration if liquidation should result;

5. The proximity of the witnesses necessary to the administration of the estate; and

6. The proximity of the debtors to the Court.

*In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239, 1248 (5th Cir. 1979).

A number of courts have included as an additional consideration the "state's interest in having local controversies decided within its borders." *In re Newport Creamery, Inc.*, 265 B.R. at 618 (citing *In re Standard Tank Cleaning Corp.*, 133 B.R. 562, 567 (Bankr. E.D.N.Y. 1991)). For example, the United States Bankruptcy Court for the District of Nevada transferred a bankruptcy case to the Southern District of Florida, where the debtor's principal asset was a nightclub located in Miami Beach, Florida. *In re B.L. of Miami, Inc.*, 294 B.R. 325 (Bankr. D. Nev. 2003). The court explained:

> Just as a Florida judge may well prefer to send a Nevada casino bankruptcy to Nevada even if venue were proper in Florida, this court sees strong reason to send a Chapter 11 case involving solely a Florida nightclub to Florida. This is because "in bankruptcy, more than in most other kinds of federal proceedings, judges tend to draw on their experience to test the promises and platitudes floated up to the bench." . . . . It is the judge in that community that is in the better position to judge whether the particular enterprise "is a good candidate for reorganization . . . in the economic community in which it operates."

*Id.* at 332 (quoting *In re Abacus Broad. Corp.*, 154 B.R. 682, 683 (Bankr. W.D. Tex. 1993) and also citing *In re Consol. Equity Prop., Inc.*, 136 B.R. 261, 267 (D. Nev. 1991) (stressing that a court should consider "any local interests" when determining venue)).

Texas's interest in deciding the controversies of this case is overwhelming, given that the Property is located in Texas. In addition, the Debtor has little association with Alabama, which

does not rise to the level necessary to satisfy Section 1408. All of these factors weigh in favor of transferring this case to the Texas Court.

### 1. The Location of the Asset

The Debtor's principal asset is real property located in Cooke County, Texas. Real property is a "peculiarly local concern often better administered by a court in the district in which it is located." *In re Pavilion Place Assocs.*, 88 B.R. 32, 36 (Bankr. S.D.N.Y. 1988). Numerous opinions hold that in a bankruptcy case where the single or principal asset is real property, the case should be transferred to the jurisdiction where the improved property is located. *Id.* (citing cases); *In re B.L. of Miami, Inc.*, 294 B.R. at 332 (quoting cases and explaining that "[w]here a debtor's assets consist solely of real property, . . . courts 'have held that transfer of venue is proper because matters concerning real property have always been of local concern and traditionally are decided at the situs of the property.'"). Consideration of the location of the Debtor's principal asset favors a transfer of this case to the Texas Court.

### 2. Proximity of Creditors to the Court

It would be in the best interest of the creditors to have this case transferred to the Texas Court. All of the Debtor's secured creditors and the majority of its unsecured creditors are located in Texas. In order to "confirm a plan under chapter 11, it must be accepted by both a majority of creditors and by creditors holding a majority in amount claimed against the debtor." *In re Commonwealth Oil Refining Co., Inc.*, 596 F.2d at 1248.

In refusing to transfer a bankruptcy case to the Western District of Texas, the United States Bankruptcy Court of the District of Hawaii noted that (i) the largest secured creditor, holding approximately 75% of the total outstanding debt, and (ii) the primary asset of the debtor—a beach hotel, were both located in Hawaii. *In re Kona Joint Venture I, Ltd.*, 62 B.R.

169, 172 (Bankr. D. Haw. 1986). The court therefore concluded (using the factors set forth in *Commonwealth Oil*) that to administer the estate in Texas "would defy good sense." *Id.*

### 3. The Economic Administration of the Estate

Transferring the venue of this case to the Texas Court will alleviate considerable time and expense that would be incurred by the creditors, appraisers and experts if forced to travel to Alabama. In fact, in its complaint filed on September 28, 2011 [*Docket No. 39*] the Debtor requested a valuation of the Texas Property, to permit the Debtor to treat NTHG's claim as unsecured, pursuant to U.S.C. § 506, if the Property is undervalued. Such a request clearly demonstrates the unnecessary time and expense that will be incurred if the case is not transferred to the Texas Court. If the Debtor's request is granted, this Alabama Court will order Texas appraisers to value the Texas real estate market—then travel to Alabama for a hearing or testimony.

The transfer of this case would additionally promote judicial economy, as the secured creditors, the majority of unsecured creditors, and the Debtor's principal asset is not located in Alabama. Further, the Debtor conducts its business in Texas.

The Debtor will undoubtedly argue that a transfer to the Texas Court will impose additional expenses upon it because the Debtor's majority owner/managing member is located in Alabama. However, the fact that one of the Debtor's owners lives in Alabama does not make Alabama a proper venue for this bankruptcy proceeding under Section 1408.

The chapter 11 process will be burdened by the travel time and inconvenience to numerous parties required in order to meet regarding creditors' committee, expert witnesses, appraisers and individual creditors. It is simply not economical to conduct a chapter 11 case in a forum such as Alabama when the Property is in Texas.

### 4. The Necessity for Ancillary Administration if Liquidation Should Result

"In the best of cases, a Chapter 7 trustee appointed following an unsuccessful attempt at reorganization of an operating business faces a daunting task." *In re Newport Creamery, Inc.*, 265 B.R. 614, 621 (Bankr. M.D. Fla. 2001). In the case at hand, those problems would be significantly multiplied by the fact that the Debtor's principal asset is not located in Alabama, where the appointed trustee would be located.

In the event of a conversion, the trustee would be responsible for the liquidation of the Property. The Property is in Texas and is encumbered by debt subject to Texas law. The trustee would therefore face immediate issues of Texas property, deed, title and recording laws, as well as issues concerning valuation and priority of potential junior liens.

### 5. Proximity of the Debtor and Proximity of Witnesses to the Court

The Debtor is a Texas limited liability company, organized and existing under Texas law with its principal place of business in Texas. The Debtor may argue that its principals make business decisions in Alabama. However, the Debtor's business is owning and managing a hotel in Texas—not Alabama.

In addition, all testimony regarding the Debtor's principal asset will require witnesses from Texas (with the exception of one of the Debtor's owners). Appraisers, brokers, sales agents, and other persons familiar with the Cooke County, Texas hotel industry and real estate market will be required to travel to Alabama. If objections to creditors' claims are filed, the court may be required to conduct hearings and take testimony regarding such claims. Based on the fact that only one person involved with this bankruptcy is located in Alabama, it is clear that Alabama will not be a convenient forum in which to litigate claims objections.

### B. Interest of Justice

Section 1412 authorizes transfer of venue "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added). The use of the disjunctive "or" indicates that the two components are separate. Courts have pointed out, however, that as a practical matter in most cases—and the case at hand is no different in this regard—if the convenience of the parties test is satisfied, it usually follows that the interest of justice will also be served by the transfer. *In re Pinehaven Assocs.*, 132 B.R. 982, 989-90 (Bankr. E.D.N.Y. 1991).

"'The interest of justice' is a broad and flexible standard which contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness and fairness." *In re Campbell*, 242 B.R. 740, 746 (quoting cases). The United States Bankruptcy Court for the Eastern District of New York has also explained:

> An interest of justice venue transfer analysis encompasses, among other things, inquiry as to the forum which facilitates the efficient, proper and expeditious functioning of the courts. Although vague, this inquiry would include looking into the desirability of having a judge familiar with applicable law hear and determine issues arising in the case.

*In re Pinehaven Assocs.*, 132 B.R. at 990 (citing cases); *see also Reid-Ashman Mfg., Inc. v. Swanson Semiconductor Serv., L.L.C.*, No. C-06-04693, 2008 U.S. Dist. LEXIS 14748, at *5-6 (N.D. Cal. Feb. 14, 2008) (discussing factors in the context of a civil lawsuit, such as judicial efficiency, the state's interest in having local controversies decided within its borders by those familiar with its laws, and the enforceability of the judgment).

Clearly, the interest of justice will best be served by a transfer of this case to the Texas Court. The Texas Court can address the inevitable questions of Texas property law and evaluate appraisals of the Property with greater ease, familiarity, and efficiency than can reasonably be expected from a court outside the state where the Property is located. Any proceeding to value the Property will require the testimony of local appraisers, brokers, sales agents, and other

persons familiar with local market conditions. The expense of requiring Texas experts to travel to Alabama to establish or contest the value of the Property will impose unnecessary expense and not serve the interest of justice.

The interest of justice component of Section 1412 is an elusive term that is "more felt than seen", and this is true in the instant case. *In re Landmark Capital Co.*, 19 B.R. 342, 348 (Bankr. S.D.N.Y. 1982). Having chosen to organize under Texas law, and operate a hotel in Texas, the Debtor knowingly subjected itself to the possibility of legal action in Texas. Venue in Alabama will impose an undue burden and expense upon most of the creditors, many of whom would likely be forced to forgo pursuit of their rights if they are forced to do so in Alabama.

If the automatic stay were lifted, foreclosure can only proceed under Texas law. *See In re Dew Mortgage. Co.*, 10 B.R. at 244. In the event a sale of the Property becomes necessary or desirable, all inspections and title searches must be conducted in Texas. All of the Loan Documents are governed by Texas law.

Based on the foregoing, transfer of this case to the Texas Court would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness and fairness, and therefore is clearly in the interest of justice.

## CONCLUSION

In the interest of justice, for the convenience of the parties, and based on the fact that the principal asset in this case is Texas real property, this case should be dismissed or, in the alternative, transferred to the Texas Court. NTHG respectfully requests that this Court enter an order (i) dismissing this case or, in the alternative, (ii) transferring this case to the Texas Court for referral to the appropriate bankruptcy court, and (iii) providing such other relief as this Court deems appropriate.

Respectfully submitted, this 7th day of October, 2011.

/s/ Jesse S. Vogtle, Jr.
Jesse S. Vogtle, Jr.
Paul H. Greenwood
BALCH & BINGHAM LLP
PO Box 306
Birmingham, AL 35201
Telephone: (205) 251-8100
Facsimile: (205) 226-8799

*Attorneys for North Texas Hotel Group, Ltd.*

# CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been filed and delivered via filing on the Court's CM/ECF system on the 7th day of October 2011, to the parties receiving electronic notices in this bankruptcy case.

Tazewell Shepard
Tazewell Shepard, P.C.
P.O. Box 19045
Huntsville, Al 35804

Airco Services
6510 Abrams Road, Suite 320
Dallas TX 75231

All Seasons Landscapes, LP
PO Box 880
Gainesville TX 76241-0880

American Hotel Register Co.
16458 Collection Ctr. Dr.
Chicago IL 60693

Ben Keith
PO Box 901001
Fort Worth TX 76101

Choice Hotels International
PO Box 79882
Baltimore MD 21279-9882

Choice Hotels International
PO Box 99992
Chicago IL 60696-7792

Cooke Co, Lat Rd, G'vill Hosp
c/o Perdue Brandon Fielder
Po Box 8188
Wichita Falls TX 76307

Cooke County Appraisal
201 North Dixon
Gainesville TX 76240

Cooke County Appraisal
c/o Perdue Brandon Fielder
Collins & Mot
P.O. Box 8188
Wichita Falls TX 76307

Courtsey Products LLC
PO Box 840020
Kansas City MO 64184-0020

David G. Drumm,
Substitute Trustee Carrin
901 Main Street, Suite 5500
Dallas TX 75202

Dow Jones & Company
PO BOX 7001
Chicopee MA 01021-9903

Fire and Safety
1601 MLK Jr. Blvd.
Wichita Falls TX 76307

First Citizens Bank
PO Box 690
Temecula CA 92593

Gagandeep Dhaliwal
PO Box 2675
Huntsville AL 35804

Glass Doctor of Texoma
PO Box 1644
Gainesville TX 76241

Golden Triangle
1516 Masch Branch Road,
Suite B
Denton TX 76207

Guest Supply Company
PO Box 910
Monmouth Junction NJ
08852-0910

Internal Revenue Service
P O Box 7346
Philadelphia, PA 19101-7346

Jagmohan Dhillon
c/o Jeff Carruth
3030 Matlock Rd Ste 201
Arlington, TX 76015

JanPak DFW
3101 High River Road. STE 101
Fort Worth TX 76155

Lamar Outdoor Advertising
2931 Texoma Drive
PO Box 1482
Denison TX 75020

Maynard, Cooper, & Gale
1901 Sixth Avenue North
2400 Regions/Herbert Plaza
Birmingham AL 35203

Morris Cross Roofing
1466 CRr 107
Whitesboro TX 76273

New Carbon Distributing
PO BOX 71
Buchanan MI 49107

North Texas Hotel Group
207 Hillside Lane
Lindsay TX 76250

| | | |
|---|---|---|
| Orkin Pest Control<br>PO Box 3208<br>Sherman TX 75091 | Secretary of the Treasury<br>1500 Pennsylvania Ave NW<br>Washington, DC 20220 | U.S. Small Business<br>Administration<br>Little Rock Servicing Center<br>2120 Riverfront Drive,<br>Suite 100<br>Little Rock, AR 72202 |
| Paramount Alarm Systems<br>PO Box 195489<br>Dallas TX 75219 | Seigers Plumbing Company<br>PO Box 1004<br>Gainesville TX 76241 | |
| Parminder Dhaliwal<br>32210 Highway 377 North<br>Gordonville TX 76245 | Terminex Commercial<br>4601 LANGLAND RD<br>SUITE 101<br>Dallas TX 75244 | United States Attorney<br>Northern District of Alabama<br>1801 Fourth Avenue North<br>Birmingham, AL 35203 |
| Pool Services<br>TOM McElvain<br>1306 College View<br>Gainesville TX 76240 | U.S. Securities and Exchange<br>Commission<br>Regional Director Branch of<br>Reorganization<br>Atlanta Regional Office<br>3475 Lenox Rd NE Ste 500<br>Atlanta, GA 30326 | United States Bankruptcy<br>Administrator<br>Northern District of Alabama<br>1800 Fifth Avenue North<br>Birmingham, AL 35203 |
| Royal Cup<br>PO Box 170971<br>Birmingham AL 35217 | | US Bank<br>PO BOX 790401<br>Saint Louis MO 63179-0401 |
| | | Western Printing Company<br>PO BOX 1276<br>Aberdeen, SD 57402 |

 

/s/ Jesse S. Vogtle, Jr.
Jesse S. Vogtle, Jr.